```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN BARRON,                     :    CIVIL ACTION
                                  :    NO. 20-5763
         Plaintiff                :
    v.                            :
                                  :
ABINGTON TOWNSHIP, et al.,        :
                                  :
         Defendants.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           March 30, 2022

## I.    INTRODUCTION

Plaintiff Kevin Barron brings this action against Defendants Abington Township (the "Township"), Richard Manfredi, and Tara Wehmeyer alleging discrimination, retaliation, and violations of his constitutional rights arising from Plaintiff's termination from the Township's employ.

Plaintiff's claims against the Township are brought pursuant to the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621, et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act (the "PHRA"), 43 P.S. § 951, et seq. He also asserts a claim against Manfredi and Wehmeyer for aiding and abetting under the PHRA. And finally, Plaintiff brings a claim against all Defendants for violations of various constitutional rights pursuant to 42 U.S.C. § 1983.

1

Defendants filed a motion for summary judgment, which has been fully briefed and is ripe for the Court's review.

Plaintiff does not contest the motion as it pertains to his claims under 42 U.S.C. § 1983, nor for retaliation under Title VII, the ADEA, or the PHRA, so the motion will be granted as uncontested as to these claims. For the foregoing reasons, the Court will also grant the motion as to Plaintiff's remaining claims and summary judgment will be entered in favor of Defendants.

## II.   BACKGROUND[1]

Plaintiff is a male who was fifty-four years old at the time this action commenced. He was hired by the Township in 1989. He began his employment as a payroll clerk, and subsequently worked in several positions within the Township's finance department until he was ultimately promoted from Assistant Finance Director to Finance Director on February 1, 2015. During the time Plaintiff was employed as Finance Director, Jeannette Hermann, another employee of the Township, worked as Assistant Finance Director. At all times material to this case, Defendant Manfredi worked as Township Manager and Defendant Wehmeyer worked as Assistant Township Manager.

---

[1]     As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

Sometime in 2018, Manfredi approached Plaintiff to discuss the possibility of Plaintiff transferring from the Finance Director position to become the Township's Public Works Director. See Barron Dep. at 32:8-33:6, ECF No. 14-2. When Plaintiff asked why Manfredi was proposing the transfer, Manfredi pointed to Plaintiff's management skill and knowledge of budgeting and finance, saying that this made Plaintiff the "perfect person" to take over as Public Works Director. Id. at 38:2-24. Manfredi told Plaintiff that if he decided to accept the Public Works Director Position, Hermann would replace him as Finance Director so long as Plaintiff approved of her promotion.

Plaintiff expressed concern that he lacked the qualifications or experience to take over the new role. Manfredi assured him that he would be able to learn the job and told him that the previous Public Works Directors would "be around to help [him]" if he needed. Id. at 40:15-17. Plaintiff continued to voice concerns about the role, and claims that he and Manfredi "had discussions that got heated and [Manfredi] screamed back at [Plaintiff] and said if you don't want to take the job, you don't have to." Id. at 46:21-23. Plaintiff avers that, as a result of his conversations with Manfredi, he effectively "had no choice" but to accept the position. Id. at 40:19. However, Plaintiff admitted in his deposition that he never told Manfredi that he did not want the job. See id. at

3

47:20-48:1; see also Wehmeyer Dep. at 30:5-15, ECF No. 14-2 ("[I]t was made clear that at any point if [Plaintiff] was not comfortable or did not want to take this position, he did not have to. He could remain as finance director[.]").

Plaintiff ultimately accepted the new position and began work as the Township's Public Works Director on January 7, 2019. For a brief period after starting his new position, he continued to assist the Finance Department with work he had previously performed. In this connection, he was required to maintain electronic access to his personal file, which was located on the Finance Department's shared drive. Plaintiff's personal file, referred to in the briefing and hereinafter as the "Kevin File," contained thirty years of work and information prepared and collected by Plaintiff in his roles within the Township's Finance Department, and included files related to the Township's budgets, payroll, and pensions, as well as personal documents. The Finance Department's files were "locked down" so they could not be accessed by anyone outside the department. See Vasserman Dep. at 21:21-23.

After Plaintiff's work for the Finance Department was completed, Hermann notified him that he would lose access to the Finance Department's shared drive, including the Kevin File, because he was no longer performing any Finance Department work. On or around August 19, 2019, Hermann directed Nathan Vasserman,

4

a Technology Officer for the Township, to revoke Plaintiff's access to the shared drive. When Plaintiff discovered that his access to the Kevin File had been revoked, he asked Vasserman to reinstate his access. When his access was restored, Plaintiff moved the entire Kevin File into his folder within the Public Works shared drive. Unlike the Finance Department, the Public Works shared drive is not "locked down," meaning it could be accessed by employees outside the department.

On August 21, 2019, Hermann noticed that the Kevin File was missing from the Finance Department's shared drive. Hermann contacted Vasserman via text message, who explained that "[Plaintiff] asked me if he could get some of his files off [the Kevin File]. Maybe he moved/deleted them instead of copying." Defs' Mot. Ex. L, ECF No. 14-3. Hermann then personally asked Plaintiff to return the Kevin File. According to Hermann, Plaintiff refused to return the entire file to the Finance Drive but said that he would send Hermann any specific items she may need from the file. Hermann Dep. 54:18-55:7. Hermann notified Wehmeyer and Manfredi of Plaintiff's actions. Wehmeyer requested assistance from Lieutenant Steve Fink of the Township Police Department to conduct a forensic investigation to determine whether Plaintiff had altered or deleted any files when he moved the Kevin File to the Public Works directory. After conducting the investigation, Lieutenant Fink concluded that about 35

5

individual files had been altered or deleted, but stated that he did not "see anything malicious." Def's. Mot. Ex. O, ECF No. 14-3. Manfredi and Wehmeyer also asked Township Labor Attorney John McLaughlin to investigate the incident.

McLaughlin interviewed the involved parties and reviewed the Kevin File and Township policies. Thereafter, McLaughlin produced an investigation report in which he concluded that "Barron's actions were knowing, voluntary and willful and violated several written Township policies and the Township Code of Conduct." Def's Mot. Ex. P, ECF No. 14-3 at 115. He further concluded that Barron "failed to cooperate with Hermann regarding the return of the Kevin File and knowingly potentially interfered with her ability to do her job effectively." Id., ECF No. 14-3 at 117. McLaughlin also stated that during the investigation, Barron made statements that were inaccurate and misleading in an attempt to "put his actions in a better light." Id.

Based on these findings, McLaughlin recommended that Barron's employment with the Township be terminated, as he could "no longer be trusted to work in the best interests of the Township." Id., ECF No. 14-3 at 125. The investigation report and recommendation were presented to the Township Board of Commissioners, who approved the recommendation after a vote and authorized Manfredi to terminate Plaintiff's employment with the

6

Township. See Def's Mot. Ex. D at ¶ 2, ECF No. 14-2. Plaintiff was then called to a meeting with Manfredi, Wehmeyer, and McLaughlin, where he was presented with McLaughlin's report and given an opportunity to present his side of the story. Barron Dep. at 116:16-19, ECF No. 14-2. Plaintiff declined to speak further on the incident, stating that "no one was believing . . . [his] reasons for moving the files." Id. at 116:20-21. Plaintiff was terminated on September 20, 2019.

On November 18, 2020, Plaintiff filed the instant Complaint. The Complaint brings five counts: (I) age discrimination and retaliation in violation of the ADEA against the Township; (II) sex discrimination and retaliation in violation of Title VII against the Township; (III) age and/or sex discrimination and retaliation in violation of the PHRA against the Township; (IV) aiding and abetting under the PHRA against Manfredi and Wehmeyer; and (V) violations of various constitutional rights under 42 U.S.C. § 1983 against all defendants.

### III. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there

7

is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. Am. Eagle Outfitters, 584 F.3d at 581. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56 (1963)).

**IV. DISCUSSION**

The parties agree that Plaintiff's ADEA, PHRA, and Title VII claims should be analyzed under the well-rehearsed burden-

8

shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The McDonnell Douglas framework proceeds in three steps. First, the plaintiff must establish a prima facie case of racial discrimination. The plaintiff's burden at this stage is "not onerous," as the goal "is to 'eliminate[ ] the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir. 2010) (alteration in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

If a plaintiff establishes his prima facie case, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original) (quoting McDonnell Douglas, 411 U.S. at 802). This burden is "relatively light" and is satisfied if the employer provides "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Finally, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence

that the employer's explanation is pretextual." Id. To defeat a motion for summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764 (citing Hicks, 509 U.S. at 517). Under the burden-shifting framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. at 763 (citing Burdine, 450 U.S. at 253).

### A. Age Discrimination under the ADEA and PHRA

The ADEA prohibits an employer "from taking adverse employment actions against an employee 'because of' an employee's age." Carter v. Mid-Atlantic Healthcare, LLC, 228 F. Supp. 3d 495, 501 (E.D. Pa. 2017). The plaintiff must show "that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). However, it need not be the sole cause. Miller v. CIGNA Corp., 47 F.3d 586, 596 (3d Cir. 1995).

To establish a prima facie case under the ADEA, Plaintiff must show that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and

10

(4) he was "ultimately replaced by another employee who was sufficiently younger so as to support an inference of discriminatory motive." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015); Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Because the age discrimination provisions of the ADEA and PHRA are "analogous" the above requirements for Plaintiff's ADEA claim apply equally to his PHRA claim for age discrimination. See Popko v. Lehigh Valley Health Network, 776 Fed. Appx. 768, 775 (3d Cir. 2019) (citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998)).

Plaintiff does not argue that his termination was a result of age discrimination.[2] Rather, he claims that Defendants discriminated against him based on his age in transferring him to the Public Works department. Plaintiff argues that his transfer was an adverse action and that the Township replaced him as Finance Director with Herman, who he claims is "sufficiently younger," to support an inference that he was transferred due to his age.

---

[2] When Plaintiff was terminated, he was replaced as Public Works Director by Amy Montgomery. Plaintiff and Montgomery are approximately the same age. See Complaint ¶ 7, ECF No. 1 (Plaintiff is 54 years old); Def's. Resp. to Interrogatories ¶ 17 (Montgomery was 54 years old when she was employed as Public Works Director). With respect to his termination, Plaintiff therefore cannot show he was "ultimately replaced by another employee who was sufficiently younger so as to support an inference of discriminatory motive." Willis, 808 F.3d at 644. Accordingly, he cannot establish a prima facie case of age discrimination based on his termination.

11

But Plaintiff's transfer is not an adverse employment action for the purposes of his ADEA or PHRA claims. "Employment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." Barnees v. Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015) (collecting cases). In any event, there is little to no evidence to show that the transfer was adverse in any way, and in fact, Plaintiff received a $15,000 raise for accepting the new position. What the evidence demonstrates is that it was Plaintiff's own decision to accept the transfer. While he claimed in his deposition that he felt he "had no choice," he admitted that he never told Manfredi that he did not want to transfer or that he did not believe he could adequately do the job. See Barron Dep. at 40:19, 41:8-13, 46-48, ECF No. 14-2.

Under these circumstances, Plaintiff has not shown that his transfer to the position of Director of Public Works was an adverse employment action under the applicable statutes. He has therefore not stated a prima facie case of age discrimination under the PHRA or the ADEA. Consequently, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's age discrimination claims.

**B.     Gender Discrimination under Title VII and the PHRA**

To establish a prima facie case of gender discrimination under Title VII, Plaintiff must show that (1) he is a member of a protected class;[3] (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably or there exist circumstances that raise an inference of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). The analysis for Plaintiff's PHRA claim for gender discrimination is "identical to a Title VII inquiry." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000).

Defendants again assume for the purposes of their motion that Plaintiff has satisfied the first three elements of his gender discrimination claim. However, they argue that Plaintiff has not established that members of the opposite sex were treated more favorably or that any circumstances exist which would raise an inference of discrimination. Plaintiff counters that he has established an inference of gender discrimination, simply because he was replaced by a woman, Amy Montgomery.

---

[3]     Because Plaintiff is a male, his Title VII claim for gender discrimination may be more appropriately characterized as a reverse discrimination claim. See generally Medcalf v. Trustees of Univ. of Pennsylvania, 71 Fed. Appx. 924, 927 (3d Cir. 2003) (characterizing a male plaintiff's gender discrimination claim as one for "reverse discrimination"). However, the inquiry is ultimately the same as in a traditional gender discrimination claim: Plaintiff must present "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others" based upon gender. See id. (quoting Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999)).

13

Although the Third Circuit has not squarely addressed the issue in a published opinion, some courts have found that an allegation that a plaintiff in a gender discrimination case was replaced by someone of a different gender may give rise to an inference of unlawful discrimination. See, e.g., Medcalf, 71 Fed. Appx. at 927 (finding that a male plaintiff had made a prima facie case of gender discrimination by showing in part that he was a male and that a woman was selected over him for an open position); see also May v. PNC Bank, 434 F. Supp. 3d 284, 296 (E.D. Pa. 2020) ("[W]hile proof of the elements of a prima facie case may vary depending on the facts on context of the individual situation, '[c]ommon circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement[.]'") (quoting McCormick v. Allegheny Valley School, No. 06-cv-3332, 2008 WL 355617, at *9 (E.D. Pa. Feb. 6, 2008)). Therefore, the Court will assume without definitively deciding that Plaintiff has met his burden to show that his replacement by a person of a different gender gives rise to an inference of discrimination.

In response, Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, which is that he moved the confidential information within the Kevin File into an unprotected subdirectory and then refused to cooperate to return the file. Therefore, under the McDonnell Douglas

14

framework, it is Plaintiff's burden to demonstrate that this reason was merely a pretext for gender discrimination. McDonnell Douglas, 411 U.S. at 802.

Plaintiff first argues that Manfredi stated in his deposition that he did not believe that Plaintiff ever "acted in a way that he intended to harm Abington Township." Manfredi Dep. at 75:22-25, ECF No. 15-1. But Manfredi went on to explain that he terminated Plaintiff in reliance upon McLaughlin's recommendation that was approved by the Board of Commissioners. Id. at 76:9-14. And McLaughlin's report did not conclude that Plaintiff expressly intended to harm the Township; rather, McLaughlin recommended Plaintiff be terminated because he found that Plaintiff had violated a number of Township policies and acted in such a way that he could "no longer be trusted to work in the best interests of the Township." Def's Mot. Ex. P, ECF No. 14-3 at 125. Defendants' decision to terminate Plaintiff was therefore not premised on any notion that he intended harm to the Township, but that his actions cast serious doubt on his trustworthiness as a Township employee and director. Therefore, Manfredi's statement that he does not believe Plaintiff "acted in a way that he intended to harm Abington Township" does not cast doubt on Defendants' stated reasons for the termination.

Plaintiff next argues that McLaughlin's report is so biased that it was unreasonable for Defendants to rely upon it in

15

deciding to terminate him. The Third Circuit has found that "the facial accuracy and reliability of [a] report is probative of whether [the employer] acted in good faith reliance upon the report's conclusions: the less reliable the report may appear, the greater the likelihood that [the employer's] reliance on it to justify [its] actions was pretextual." Kowalski v. L&F Prods., 82 F.3d 1283, 1290 (3d Cir. 1996). The Kowalski court found that "serious questions regarding the reliability of the investigator's report" raised a genuine issue of material fact as to whether the reasons for termination were pretextual.

Plaintiff has not shown that McLaughlin's report was materially unreliable or inaccurate. Plaintiff spends significant time attacking McLaughlin's word choice (i.e., taking issue with McLaughlin referring to the incident as an "ordeal"), which has little to no bearing on whether the conclusions contained within the report should be disregarded. And many of Plaintiff's arguments are plainly contradicted by the evidence of record. For example, Plaintiff argues that there is no factual foundation for the conclusion that Barron, as Public Works Director, "had no authority to remove the Kevin File from the Finance Drive." Pl's Resp. at 19, ECF No. 15. But there is ample evidence that Plaintiff's authority to access the finance drive had been revoked; for example, the Finance drive was "locked down" so other employees could not access it, and

16

Hermann had told Plaintiff previously that his access to the drive would be removed when he completed his work with the Finance Department. See Vasserman Dep. at 21:21-23; Hermann Dep. at 48:6-21, ECF No. 14-2. Plaintiff points to nothing in the report that creates an issue of material fact as to whether the reasons for his termination were pretextual.

Because the evidence suggests that Manfredi reasonably relied upon McLaughlin's report in deciding to terminate Plaintiff's employment and because Plaintiff has pointed to no "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' reasons for their actions that would allow a reasonable factfinder to conclude that they were a pretext for gender discrimination, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's claims for gender discrimination under Title VII and the PHRA.

### C. Aiding and Abetting under the PHRA

Plaintiff's claim for aiding and abetting under the PHRA is premised upon his contention that he was treated disparately and/or retaliated against because of his age or gender. As explained in the foregoing sections, Defendants' motion for summary judgment will be granted as to Plaintiff's underlying discrimination and retaliation claims. Because there is therefore no cognizable predicate offense, the Court will also

grant Defendants' motion as to Plaintiff's aiding and abetting claim against Manfredi and Wehmeyer.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted in full.

An appropriate order follows.